IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Matthew King,                                    :
                    Plaintiff              Civil Action 2:10-cv-800
                                                 :

         v.                                      :    Judge Marbley

Michael J. Astrue,                               :    Magistrate Judge Abel
Commissioner of Social Security,
                    Defendant                    :

**REPORT AND RECOMMENDATION**

Plaintiff, Matthew King brings this action under 42 U.S.C. §§405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying his applications for Social Security Disability and Supplemental Security Income benefits.  This matter is before the Magistrate Judge for a report and recommendation on the administrative record and the parties' merits briefs.

**<u>Summary of Issues.</u>**   In Plaintiff King's application before this Court, he maintains that he became disabled on December 15, 2005, at age 34, due to avascular necrosis of  his left arm, shoulder/arm injury, degenerative disk disease of his back, high blood pressure, fatty liver disease and a TIA (stroke).  The administrative law judge found that King could perform a significant number of light exertional jobs in the national economy.

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge failed to recognize all of King's severe impairments.

- The administrative law judge's residual functional capacity finding did not accurately account for King's upper and lower extremity limitations.

- The administrative law judge erred in relying on vocational expert testimony, given in response to an improper hypothetical question, to reach his decision that plaintiff is not disabled.

**Procedural History.**  On June 6, 2002, King applied for disability insurance benefits.  Following an administrative hearing on March 18, 2004, King was found disabled for a closed period from May 8, 2001 through April 23, 2003.  The administrative law judge found that King became disabled then, at age 33, by the combination of left shoulder tendonitis, brachial plexitis, and left elbow avascular necrosis. (Page ID# 118-23.)

On March 29, 2007, King filed his application for Social Security Disability and with a protective filing date of March 20, 2007.  (Page ID# 183-87.)  On November 23, 2007, King filed his application for Supplemental Security Income benefits, alleging that he became disabled on December 15, 2005, at age 34.  (Page ID# 189, 197.)  The applications were denied initially and upon reconsideration.  (Page ID# 127-28, 143-49.) King sought a *de novo* hearing before an administrative law judge.  (Page ID# 152.)  On November 16, 2009, an administrative law judge held a hearing at which King, represented by counsel, appeared and testified.  (Page ID# 71-101.)  In addition, a vocational expert testified. (Page ID# 101-10.)  On January 21, 2010, the administrative law judge issued a decision finding that King was not disabled within the meaning of

2

the Act.  (Page ID# 50-59.)  On July 12, 2010, the Appeals Council denied King's request

for review and adopted the administrative law judge's decision as the final decision of

the Commissioner of Social Security.  (Page ID# 35-37.)

**Age, Education, and Work Experience.**  King was born on May 21, 1971.  (Page

ID# 204.)   He has a high school education.  (Page ID# 232.)  King previously worked as

an appliance manager, industrial roofer, maintenance, prep cook, realtor, salesperson

and tow truck driver.  (Page ID# 208-17.)

**Plaintiff's Testimony.**  The administrative law judge fairly summarized King's

testimony as follows:

> The claimant testified that he experienced a TIA in 2004.  Afterwards he
> experienced residual effects concerning his right side including facial
> droop, slurred speech and weakness, which is led him to stop working.
> He also had indicated that he stopped working due to the neurological
> medications he was taking.  The residual effects were to have lasted five to
> six months.  Then he related that he began experiencing allergic reactions
> to foods and it was discovered he had a host of food allergies.  He also
> complained of stumbling while walking and also falling frequently.
> He has not engaged in any professional rehabilitation or therapy, but did
> say that his wife helped him with some at home.  He did not elaborate.
> He uses a cane and indicated that it was prescribed by his doctor for
> stability.  He continues to have shoulder discomfort and limitations.  He
> described significant functional limitations secondary to his conditions.
> He also testified to side effects from his medications such as drowsiness,
> dizziness and feeling off-balance.
>
> He lives in a two-story home with his wife and three daughters.  He
> continues to drive an automatic transmission vehicle with no reported
> difficulty.  He noted that occasionally he needs his wife's help in the
> mornings to fasten his pants or buttons.  He assessed that he could sit for
> about 25-30 minutes until his back hurts and his legs starts to tingle.  He
> can stand about 5 minutes before he has to move and can walk about a
> block before he has to rest.  He can pick up at least a gallon of milk with

3

his right hand, but reports not being able to lift "much at all" with his left.  He later assessed he could lift 1-2 pounds with his left hand.

On a typical day he described getting up at 6:00 a.m., taking his blood sugar readings, then getting cleaned up and dressed.  He takes his older children to school, then returns home to get the youngest child ready for school.  He wakes his wife up, then takes his wife to work and his young-est child to school.  Upon returning home, he will do a little housework, such as laundry or the breakfast dishes, but reported that his children do most of the household chores.  He has lunch and watches television and has a C-PAP treatment.  He walks to the post office, about a block away. He picks up his children from school and his wife from work, then runs any needed errands such as grocery shopping.  He indicated that his wife does not have a driver's license.  He reported that he can mow the lawn with a push mower "once in a while," but that it is usually done for him by a family member.  He reports not engaging in any hobbies but reading. He and his wife do not get out much.  His family has a computer, but he does not use it "very much."

(Page ID# 55.)

**Medical Evidence of Record.**  The relevant medical evidence of record is summarized as follows:

Jon H. Pearlman, M.D.

A left shoulder MRI taken in July 2004, showed possible scar tissue from previous shoulder surgeries, associated subluxation of the head of the humerus and tendinitis/tendinopathy about the supraspinatus tendon and the long head of the biceps.  (Page ID# 403-04.)

In November 2004, Dr. Pearlman, a physical medicine and rehabilitation specialist, completed a Medical Report for the Ohio Bureau of Workers' Compensation. (Page ID# 284.)  Dr. Pearlman opined that King could occasionally lift up to five

4

pounds; occasionally reach; never crawl or climb; never use his left hand for grasping, pushing/pulling or fine manipulation; and never use repetitive foot controls. *Id.*

In December 2004, King reported to Dr. Pearlman that he had "transient weakness and numbness" on his right side in November that had improved. King also reported intermittent left shoulder pain. On examination, he had normal range of motion and full strength, but mild tenderness in his left AC joints. (Page ID# 501.)

In May 2005, King reported continued soreness about his left shoulder and elbow. He also reported continued numbness in the fingers of his left hand, with increased sensation about the distal tip of his 5th finger. He denied focal weakness. He noted he discontinued his prescribed medications and was using Tylenol. Examination showed slight tenderness at the left elbow. Elbow range of motion was full. Left upper extremity grip strength was normal. Deep tendon reflexes were trace for biceps aud absent for triceps. Dr. Pearlman noted it was unclear if his left 5th finger sensation was secondary to neural regeneration. (Page ID# 500.)

On February 19, 2008, King reported continued difficulty with reaching and lifting his left arm, weakness and numbness throughout the left arm, difficulty reaching behind his back with his left arm, and right arm and leg weakness with episodes of falling. Examination revealed moderate tenderness throughout the left anterior shoulder and AC joint, limited shoulder motion in all directions, trace deep tendon reflexes in the biceps and absent deep tendon reflexes of the triceps; but with full strength. Dr. Pearlman concluded that King continued to experience chronic left

shoulder pain which has limited his functioning.  Dr. Pearlman offered no treatment and noted his condition is complicated by his ongoing neurological problems.  (Page ID# 411-12.)

<u>Mark M. D'Onofrio, M.D.</u>

Consulting orthopedic surgeon, Dr. D'Onofrio noted in August 2004, that he had seen King for left arm pain.  (Page ID# 401-02.)  He noted King was doing "reasonably well as far as motion goes but still has chronic pain that is significant in his shoulder. This is all day long worse with activities and same goes for his elbow." (Page ID# 401.) Dr. D'Onofrio also noted that King reported some paresthesias in all of his fingertips. Otherwise his sensation was intact to light touch in a superficial radial, median and ulnar distributions.  Dr. D'Onofrio concluded that, "At this time after having been through two shoulder surgeries and still not significantly better from as far as relief and the fact that he has good range of motion I currently do not believe at this time that he will benefit from other surgery as far as his chronic pain nature."  (Page ID# 402.)

<u>Fairfield Medical Center</u>

King initially presented to the emergency department complaining of swelling in his throat that began the morning of September 13, 2004.  He denied any new medication or food exposures or any previous illness.  He received treatment for his throat which improved and he was discharged.  Later in the day he returned to the emergency department complaining of right-sided weakness with left facial droop. Emergency department work-up at that time included CT of the head which was

negative.  Blood labs were essentially normal.  He was admitted to the medical floor for further evaluation.  He underwent a brain MRI which was normal.  EKG revealed sinus tachycardia.  Vital signs remained stable.  Throat cultures were obtained and were positive for strep.  His weakness resolved and he was able to ambulate without difficulty.  On September 15, 2004, Dr. Edwards deemed King hemodynamically stable for discharge.  (Page ID# 565-82.)

On August 8, 2007, King presented to the emergency room after falling and lacerating his right eyebrow.  King reported that his legs gave way and that falls occur on a fairly frequent basis.  He received stitches for a small facial laceration.  (Page ID# 299-300.)

An MRI of King's brain was taken on August 24, 2007, due to his history recurrent falls and leg weakness, but no abnormality was detected.  (Page ID# 461.)

Colonnade Medical Group

The record reveals that King treated with physicians and physician assistants at Colonnade Medical Group from September 13, 2004 through November 24, 2009. (Page ID# 341-61, 373-80,  382, 433-40, 583-625.)

On January 22, 2007, King complained of chest heaviness and fatigue to Certified Nurse Practitioner Rankin.  (Page ID# 344.)  She scheduled King for a Cardiolite stress test, which showed no ischemia and an ejection fraction of 62%.  (Page ID# 304-05, 325.)

King reported on November 20, 2007, that he had fallen due to leg cramps. (Page ID# 616.)  A medical student diagnosed him with sudden weakness and numbness/

tingling of unknown origin  *Id.* After examining King, Dr. Edwards concurred in that diagnosis.  (Page ID# 615.)  That same day, Dr. Edwards wrote on a prescription pad that King was "unable to seek employment due to medical reasons at this time."  (Page ID# 382.)

When seen by Physician Assistant Ratchford in April 2008, for an emergency room follow-up, it was noted that King used a cane for ambulation.  (Page ID# 614-15.)

In March 2009, King complained to Dr. Edwards of leg weakness and neuropathy in his legs.  (Page ID# 600.)

King complained to Physician Assistant Schorr on April 16, 2009, of chronic and intermittent diffuse joint pain that "moderately" limited his activities.  (Page ID# 596-97.)  On examination, King had decreased range of motion in his wrists and back, and walked with a shuffling gait, using a cane.  *Id.*

On April 16, 2009, Physician Assistant Schorr completed a Physical Capacities Evaluation on King's behalf.  (Page ID# 393-94.)  PA Schorr opined that King could stand/walk for two hours out of eight; sit for eight hours if able to change positions hourly; lift ten pounds frequently; not use his hands for grasping or fine manipulation; and occasionally bend and squat; never crawl or climb.  *Id.*  According to Physician Assistant  Schorr, King could not sustain full-time work activity, due to permanent lower extremity paresthesia and weakening, decreased motor functioning of an upper extremity and history of spinal stenosis.  *Id.*

Physician Assistant Schorr also completed an Upper Extremity Physical Capacity

Evaluation, wherein he opined that King could perform frequent gross manipulation; occasional fine manipulation; and frequent overhead reaching.  (Page ID# 395-96.)  He further indicated that King could occasionally feel with his right hand but never with his left.  *Id.*  Physician Assistant Schorr explained that King has neuropathy of the left hand with near complete paresthesias.  *Id.*

King complained of numbness during his neurologic examination performed by Physician Assistant Schorr on April 27, 2009.  (Page ID# 438-40.)

On June 8, 2009, Physician Assistant Schorr indicated that King had numbness associated with diabetes, and he complained of generalized pain in multiple unspecified limbs which moderately limited his activities.  (Page ID# 437-38.)

Dr. Edwards saw King on July 1, 2009, for lumbago, hypertension, lumbar spinal stenosis, diabetic polyneuropathy, osteoarthritis, diabetes and gastroparesis.  (Page ID# 435-36.)  Examination revealed pain in multiple limbs and swelling in both hands and both ankles.  *Id.*

Stephen J. Kolb, M.D., Ph.D.

King saw neurologist Dr. Kolb in September 2007 to evaluate his muscle cramps and spasms.  (Page ID# 536-38.)  King reported that in September 2003, he had a sudden onset of right-sided weakness and speech difficulty which lasted for about six months, at which point he was fine until 2006, when he had an allergic reaction to food.  *Id.*  Examination revealed decreased sensation in his left arm and a slightly shuffling gait.  *Id.*  Dr. Kolb concluded that King came to the clinic concerned about his family history

of multiple sclerosis in the context of his episodes of weakness, muscle cramps and spasms. Dr. Kolb noted that King's MRI findings were not consistent with multiple sclerosis, and his history suggests more of a radiculopathy or disk disease. *Id.* Dr. Kolb ordered cervical, thoracic, and lumbar spine MRIs to rule out spinal stenosis and root compression and to evaluate his disk spaces. *Id.*

On December 18, 2007, Dr. Kolb, reviewed the MRIs performed on October 22, 2007. (Page ID# 535-36.) The findings revealed mild multilevel disc degeneration of C2-3 through C5-6, mild posterior central disc protrusion at C4-5 and C5-6 causing mild spinal stenosis, mild bilateral facet hypertrophy at C4-6 causing mild narrowing of the foramina bilaterally, a minor disc bulge at C3-4, and a small broad-based left posterior disc protrusion at L5-S1 with moderate bilateral facet hypertrophy. (Page ID# 541-43.) Dr. Kolb noted that King's MRI findings were not significant enough to cause his "current symptoms." *Id.* Dr. Kolb referred King to physical and occupational therapy for evaluation of his lower extremity stiffness and weakness. (Page ID# 382.)

Dr. Kolb reported in April 2008, that EMG testing was normal with no evidence of neuropathy or any other neuromuscular disorder. (Page ID# 534, 539-40.) He also reported that given the EMG result, he was not able to provide a neuromuscular diagnosis. *Id.* He noted it appeared more likely that Plaintiff's chronic muscle aches and pains are due to a rheumatolgical or other type of disorder. *Id.*

<u>Stephanie J. Ott, M.D. F.A.C.R.</u>

On August 20, 2008, consulting rheumatologist, Dr. Ott, reported her impression

10

as fibromyalgia, chronic back pain, headaches, and celiac sprue.  (Page ID# 417-24.)
Musculoskeletal examination revealed no warmth, synovitis, crepitus or deformity.
There was full range of motion across all joints, except for the left shoulder where he
was only able to abduct to 90°.  There was minimal external rotation.  Internal rotation
was near normal.  There were greater than 11/18 tender points with hyperalgesia and
allodynia.  *Id.*  Dr. Ott recommended further sleep evaluation given King's heavy
snoring, small oral aperture, daytime somnolence and profound fatigue.  *Id.*  She
prescribed medication and advised King to exercise.  *Id.*

On December 23, 2008, King returned to Dr. Ott.  After examining King, Dr. Ott
noted his weight of 287 pounds and 11 of 18 tender points with hyperalgesia and
allodynia.  (Page ID# 415-16.)  King complained of leg numbness and tingling, but
denied muscle weakness.  *Id.*  Dr. Ott encouraged increased physical activity and use of
his CPAP machine.  *Id.*

Maureen A. Delphia, M.D.

King consulted with Dr. Delphia due to significant snoring, apneic episodes and
chronic fatigue.  (Page ID# 549-58.)  A sleep study performed on October 31, 2008,
confirmed severe obstructive sleep apnea and King was prescribed a CPAP machine.
(Page ID# 554, 556.)

Raheela Khawaja/OSU Endocrine Clinic

Endocrinologist, Dr. Khawaja, examined King on July 30, 2009, for evaluation of
his diabetes.  (Page ID# 489-99.)  Examination revealed he walked with a cane, had

11

decreased/no sensation of the left hand, and had decreased sensation of the lower extremities bilaterally up to the ankle joint. (Page ID# 489-90.) Dr. Khawaja noted that she did not know whether King's decreased sensation was due to diabetic neuropathy or multiple sclerosis. *Id.*

**Administrative Law Judge's Findings.** The administrative law judge found that:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2008.

2. The claimant has not engaged in substantial gainful activity (SGA) since December 15, 2005, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: left Shoulder arthropathy, post surgical repair; fibromyalgia and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally with his right hand and up to 5 pounds occasionally with his left. He is able to sit for at least 6 hours in an eight-hour day and stand and/or walk for a total of at least 6 hours in an eight-hour day. He is limited to occasional overhead reaching and frequent handling and/or fingering with his left upper extremity.

6. The claimant is unable to perform any past relevant work (20 CFR §§ 404.1565 and 416.965).

7. The claimant was born on May 21,1971 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(*Page ID*# 52-58.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id*.  *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court

must "'take into account whatever in the record fairly detracts from its weight."'

*Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)

(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of*

*Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**  Plaintiff argues that the decision of the Commissioner

denying benefits should be reversed because the administrative law judge failed to

recognize all of his severe impairments.   Specifically, Plaintiff contends that the

administrative law judge excluded his lower extremity paresthesias and weakness with

episodes of falling and ambulation with a cane, as well as his right upper extremity

weakness as severe impairments.

Plaintiff also contends the administrative law judge's residual functional capacity

finding did not accurately account for his upper and lower extremity limitations.

According to Plaintiff, the medical record demonstrates that he can perform neither the

standing/walking nor the manipulative activities of light or even sedentary activity.

Finally, Plaintiff contends the administrative law judge erred in relying on vocational

expert testimony, given in response to an improper hypothetical question, to reach his

decision that Plaintiff is not disabled.

**Analysis.**

The step-two burden of establishing a "severe" impairment has been char-

acterized in this circuit as *"de minimis*." *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.

1988); *Murphy v. Sec'y of Health & Human Servs.*, 801 F.2d 182, 185 (6th Cir. 1986). The

14

Commissioner states that an impairment is "not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities, [such as] walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . [u]nderstanding, carrying out, and remembering simple instructions, [and] [u]se of judgment." 20 C.F.R. § 404.1521.  Thus, in *Salmi v. Sec'y of Health and Human Servs.,* 774 F.2d 685 (6th Cir. 1985), the Court of Appeals held that an impairment qualifies as "non-severe" only if it "would not affect the claimant's ability to work," regardless of the claimant's age, education, or prior work experience.  *Id.* at 691-92.  The prevailing view, then, is that only slight abnormalities that minimally affect a claimant's ability to work can be considered non-severe.  *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988); *Farris v. Sec'y of Health & Human Servs.,* 773 F.2d 85, 90 (6th Cir. 1985).

Under those circumstances, the Court of Appeals has found that substantial evidence supports a finding of no severe impairment. *See Higgs,* 880 F.2d at 863.  The *Higgs* court acknowledged that the application of the requirement to establish "severity" is quite "lenient," but nonetheless observed that "Congress has approved the threshold dismissal of claims obviously lacking medical merit," and that "the severity requirement may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id.* at 862-63.

In this case, the medical records indicate that Plaintiff sustained an injury to his left shoulder and elbow after falling off a ladder on July 15, 1997.  He was originally awarded benefits between May 8, 2001 through April 23, 2003 due to limited in the use

of his left dominant upper extremity for a closed period. *Page ID# 71-72, 119*. Plaintiff attempted to work, then in 2005 suffered a TIA. Plaintiff has developed a number of other severe impairments which significantly affect him. The administrative law judge found in the current decision that King's severe impairments included left shoulder arthropathy, post surgical repair; fibromyalgia and obesity. *Page ID# 53*. Plaintiff contends that the medical evidence proves that he suffers from additional and significant vocational limitations in his ability to stand, walk, and use his right upper extremity. According to Plaintiff, the administrative law judge's failure to find or even address his paresthesia/neuropathy of his lower extremities and his right upper extremity as severe impairments was in error and in violation of 20 CFR § 404.1521.

The only reference in the administrative law judge's opinion to paresthesia/neuropathy of Plaintiff's lower extremities and his right upper extremity is found at *Page ID# 53*: "The records reflect that the claimant complains of right-sided weakness, but the record does not provide objective evidence of concrete causation for the alleged symptom." The administrative law judge later vaguely notes at *Page ID# 56*: "The claimant has a number of complaints related to his diabetes mellitus and neuropathy, but the record fails to substantiate significant problems which would cause greater restrictions then assessed above."

Plaintiff is correct in asserting that the decision does not expressly consider a number of treatment records referring to his complaints of lower extremity paresthesias and weakness with episodes of falling and ambulation with a cane, as well as his right

16

upper extremity weakness:

- When seen in the emergency room on August 8, 2007, for a laceration to his right elbow, it was noted King's legs give way and he falls on a fairly frequent basis. *Page ID# 299-300.*

- King was referred to physical and occupational therapy by Dr. Kolb in December 2007, for evaluation of his lower extremity stiffness and weakness. *Page ID# 382.*

- On February 19, 2008, Dr. Pearlman noted that King reported continued difficulty with right arm and leg weakness with episodes of falling. *Page ID# 411-12.*

- Dr. Edwards saw King on July 1, 2009 for lumbago, hypertension, lumbar spinal stenosis, diabetic polyneuropathy, osteoarthritis, diabetes and gastroparesis. Physical examination revealed pain in multiple limbs and swelling in both hands and both ankles. *Page ID# 435-36.*

- When Dr. Khawaja evaluated King on July 30, 2009, he reported King walked with a cane, had decreased/no sensation of the left hand, and had decreased sensation of the lower extremities bilaterally up to the ankle joint. *Page ID# 489-90.*

Plaintiff argues that this evidence demonstrates that he suffers from additional and significant vocational limitations in his ability to stand, walk, and use his right upper extremity. The administrative law judge held that he did not suffer from further impairments. However, the administrative law judge's decision does not address this evidence and consider it when determining Plaintiff's severe impairments.

The administrative law judge also observed that Plaintiff's complaints of pain were not corroborated by any clinical findings. The medical records, a portion of which are summarized above, plainly undermine this determination.

Because the sequential analysis stopped at step two, there has been no resolution

in this case as to the degree to which the Plaintiff's severe impairments affect his residual functional capacity or his ability to perform work.  In recommending remand, I make no findings about the additional limitations, if any, imposed by plaintiff's impairments to his lower extremities.  These factual determinations must be made by the Commissioner in the first instance.  Because there is additional fact finding required, the matter may not be remanded for an award of benefits, and must be remanded for further proceedings.

The Magistrate Judge **RECOMMENDS** that this case be **REMANDED**. On remand, the administrative law judge should be directed to re-evaluate Plaintiff's disability claims under the five-step sequential evaluation mandated by the Regulations and case law – including, but not limited, a re-assessment of Plaintiff's impairments at Step 2, a reassessment of Plaintiff's residual functional capacity, and to determine anew whether Plaintiff was under a disability and thus eligible for DIB and/or SSI.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v.*

18

*Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

 s/Mark R. Abel            
United States Magistrate Judge